The STATE of Ohio, Appellee,

v.

HALL, Appellant.

[Cite as *State v. Hall,* 179 Ohio App.3d 727, 2008-Ohio-6228.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–167.

Decided Dec. 2, 2008.

728

Ron O'Brien, Franklin County Prosecuting Attorney, and Barbara A. Farnbacher, Assistant Prosecuting Attorney, for appellee.

Yeura R. Venters, Franklin County Public Defender, and John W. Keeling, Staff Attorney, for appellant.

FRENCH, Judge.

{¶ 1} Defendant-appellant, James K. Hall, appeals from a judgment of the Franklin County Court of Common Pleas in which the trial court sentenced him to an aggregate prison term of 19 years upon his pleas of guilty to two counts of aggravated robbery, one of which included a firearm specification, and one count of felonious assault.

{¶ 2} On March 1, 2007, appellant was indicted on 14 counts, including kidnapping, aggravated robbery, robbery, attempted murder, and felonious assault, arising out of crimes committed on February 22, 2007, at an Ameristop Food Market in Franklin County, Ohio. On December 12, 2007, appellant entered a plea of guilty to Count 3, aggravated robbery with a firearm specification, a felony of the first degree; Count 6, aggravated robbery with no specification, a felony of the first degree; and Count 14, felonious assault, a felony of the second degree.

{¶ 3} Appellee, the state of Ohio, explained the underlying facts of this case at appellant's plea hearing, and for purposes of the plea, appellant's counsel did not dispute the state's statement of facts. On the evening of February 22, 2007, appellant and his brother, Michael Hall, entered the Ameristop, and Michael displayed a firearm. Appellant ordered a customer and the store manager to the floor and took $160 from the cash register. When another customer, Donald Croy, entered the store and did not comply with an order to get on the floor, Michael began to wrestle with Croy. The affray continued outside the store and developed into a fight between Croy, appellant, and Michael, during which appellant and Michael pistol-whipped Croy. Although both appellant and Michael

attempted to flee, Croy was able to restrain appellant until the police arrived and took him into custody.

{¶ 4} Prior to appellant's plea hearing, the trial court sentenced Michael to ten years of imprisonment for his involvement in the underlying offenses pursuant to a plea agreement. The terms of Michael's plea agreement are not part of the appellate record here.

{¶ 5} On January 25, 2008, the trial court conducted appellant's sentencing hearing, and the state recommended the maximum sentence of 31 years' imprisonment. When asked about the distinguishing factors between appellant's and Michael's cases, the prosecutor responded that although the state attributed Croy's injuries equally to both appellant and Michael, the state had a weaker case against Michael, and Michael received the benefit of that weakness. Before imposing sentence, the trial court noted appellant's previous placement in a community-based correctional facility program for another offense and its belief, based on recorded telephone conversations, that appellant wanted to use the judicial system. The trial court also viewed appellant's refusal to testify against Michael as an indication that he did not accept responsibility for his actions. The court sentenced appellant to eight years of imprisonment on Count 3, eight years on Count 6, eight years on Count 14, a three-year mandatory sentence for the firearm specification, and a five-year period of postrelease control. The court ordered that the sentences run consecutively to each other and to appellant's ten-month sentence in another case.

{¶ 6} On January 29, 2008, appellant's counsel moved the court to reconsider appellant's sentence. Appellant's counsel argued for a lighter sentence based on appellant's entry of guilty pleas, his lack of a juvenile record, and his prior criminal history. Appellant's counsel also informed the court that appellant's decision not to testify against Michael was based, at least in part, on fear that testifying would make his life more difficult in prison. Upon reconsideration, the trial court amended appellant's sentence so that the eight-year sentences for Count 3 and Count 6 would run concurrently, but consecutively to the eight-year sentence for Count 14 and the mandatory three-year sentence on the firearm specification, for a total of 19 years of imprisonment. The court ordered that the sentence in this case run concurrently with appellant's ten-month sentence from his other case. The five-year period of postrelease control remained the same. The trial court filed its judgment entry, journalizing appellant's conviction and sentence, on January 30, 2008.

{¶ 7} Appellant filed a timely notice of appeal and presently raises a single assignment of error:

> The trial court erred when it penalized the defendant by imposing an extra nine years of imprisonment because of the defendant's refusal to waive his

Fifth Amendment rights and further erred by imposing a sentence that was almost twice as long as the sentence imposed upon the co-defendant, for the same conduct, in violation of the court's obligation to sentence uniformly and fairly.

By his single assignment of error, appellant maintains that the trial court erred both by imposing an enhanced prison sentence based on his refusal to waive his Fifth Amendment privilege against self-incrimination and by imposing a sentence inconsistent with and significantly longer than Michael's sentence.

■ {¶ 8} When imposing a sentence for a felony conviction, the trial court must comply with R.C. 2929.11 and 2929.12. *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). Pursuant to R.C. 2929.11(B), "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." While courts have discretion to determine the most effective way to comply with the principles and purposes of sentencing, courts must consider factors relating to the seriousness of the conduct and the likelihood of the offender's recidivism, as set forth in R.C. 2929.12, as well as any other factors relevant to achieving the principles and purposes of sentencing. R.C. 2929.12(A). R.C. 2929.11 and 2929.12 do not, however, mandate judicial fact-finding. *State v. Holloman,* Franklin App. No. 07AP–875, 2008-Ohio-2650, 2008 WL 2250226, ¶ 18.

{¶ 9} Before turning to appellant's argument that the trial court penalized him by increasing his sentence based on his exercise of his Fifth Amendment privilege against self-incrimination, we briefly address appellant's argument that the trial court erred by imposing a sentence inconsistent with Michael's sentence. In making this argument, appellant relies on the requirement of R.C. 2929.11(B) that sentences be "consistent with sentences imposed for similar crimes committed by similar offenders."

■ {¶ 10} With respect to consistency of sentences, this court has stated as follows:

" 'Consistency * * * does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into consideration a trial court's discretion to weigh relevant statutory factors. The task of an appellate court is to examine the available data, not to determine if the trial court has imposed a sentence that is in lockstep with others, but to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice.

Although offenses may be similar, distinguishing factors may justify dissimilar sentences.' "

*State v. Battle,* Franklin App. No. 06AP–863, 2007-Ohio-1845, 2007 WL 1153083, ¶ 24, quoting *State v. King,* Muskingum App. No. CT06–0020, 2006-Ohio-6566, 2006 WL 3614754, ¶ 23, quoting *State v. Ryan,* Hamilton App. No. C–020283, 2003-Ohio-1188, 2003 WL 1094003, ¶ 10. A consistent sentence is not derived from a case-by-case comparison; rather, the trial court's proper application of the statutory sentencing guidelines ensures consistency. *State v. Swiderski,* Lake App. No. 2004–L–112, 2005-Ohio-6705, 2005 WL 3476645, ¶ 58. An individual has no substantive right to a particular sentence within the statutorily authorized range. *State v. Tewolde,* Franklin App. No. 06AP–764, 2007-Ohio-2218, 2007 WL 1346575, ¶ 13, citing *State v. Templeton,* Richland App. No. 2006–CA–33, 2007-Ohio-1148, 2007 WL 765019, ¶ 98, citing *Gardner v. Florida* (1977), 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393. Additionally, there is no requirement that codefendants receive equal sentences. *Templeton* at ¶ 103.

{¶ 11} We find no grounds for reversal of appellant's sentence based on the mere fact that it is harsher than that imposed on Michael for his involvement in the same chain of events. Importantly, the appellate record before us does not provide any details of Michael's plea agreement, and we are unable to determine even the charges to which Michael pleaded guilty. Despite appellant's arguments that there are no distinguishing characteristics to justify the difference between the sentences other than appellant's refusal to testify against Michael, we cannot make that determination based on the record before us. Nevertheless, we must consider whether the trial court properly applied the statutory sentencing guidelines in arriving at appellant's sentence.

{¶ 12} Appellant contends that the trial court erred by penalizing him with an increased sentence based on the exercise of his constitutional right against self-incrimination when he refused to testify against Michael. The Fifth Amendment privilege against self-incrimination provides that no person shall be compelled to be a witness against himself in a criminal case and permits a person to refuse to answer official questions in another proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Minnesota v. Murphy* (1984), 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409, citing *Lefkowitz v. Turley* (1973), 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274.

{¶ 13} It is undisputed that appellant refused to testify against Michael, whose trial was scheduled to commence before appellant's entry of a guilty plea, even though appellant had previously expressed his willingness to enter into a plea agreement that had been offered to both him and Michael. Thus, when requested to testify against Michael, appellant's own case remained pending, and

appellant retained the constitutional privilege to refuse to give testimony that could be used against him in his own case. The trial court expressly mentioned appellant's refusal to testify against Michael immediately before announcing appellant's sentence. The trial court stated as follows:

I mean, in terms of, yeah, ultimately the Defendant has pled guilty to three counts of this thing. At the beginning of this in phone conversations, he was telling family members to make sure that his brother stayed up north, wherever that happened to be, and that he was quote, willing to take the fall for the team but wasn't willing to help the State resolve this case.

You know, it did end up being a matter of the State almost going to trial against Michael, which clearly if the Defendant had really been, I think, accepting responsibility for what went on that evening, he would have been letting the State know what was going on, including what happened with his brother and what his brother did.

{¶ 14} The Eighth District Court of Appeals considered a similar scenario in *State v. Glass,* Cuyahoga App. No. 83950, 2004-Ohio-4495, 2004 WL 1903251. In that case, the defendant, her brother, and her boyfriend were indicted as codefendants and charged with felonious assault and attempted aggravated murder, along with various specifications. The defendant entered a guilty plea to an amended indictment that charged her with attempted felonious assault with no specifications, and the trial court sentenced her to a three-year prison term followed by three years of postrelease control. On appeal, the defendant argued, in part, that the judge had improperly relied on her refusal to testify against her boyfriend as an aggravating factor in determining her sentence. In support, the defendant relied on the judge's stated belief that the defendant's refusal to testify demonstrated a lack of remorse.

{¶ 15} On appeal, the Eighth District noted that because the defendant's case remained pending at the time of her boyfriend's trial, she retained her constitutional right to avoid self-incrimination at that time. In accordance with other Ohio appellate courts, the Eighth District held that it is inappropriate to punish a defendant for the exercise of a constitutional right. See, e.g., *State v. Scalf* (1998), 126 Ohio App.3d 614, 620–621, 710 N.E.2d 1206 (improper to punish defendant for exercising right to trial); *State v. Hoover,* 173 Ohio App.3d 487, 2007-Ohio-5773, 878 N.E.2d 1116, ¶ 7 (improper to punish defendant for exercising right to refuse a warrantless search). Ultimately, the court found that, by citing the defendant's refusal to testify as an aggravating factor in sentencing, the judge's application of the statutory sentencing guidelines was contrary to law.

■ {¶ 16} It is clear that a sentencing judge may not enhance a defendant's sentence to penalize the defendant for exercising the privilege against self-incrimination. See, e.g., *United States v. Safirstein* (C.A.9, 1987), 827 F.2d 1380,

1388; *United States v. Rivera* (C.A.2, 1999), 201 F.3d 99; *United States v. Heubel* (C.A.3, 1989), 864 F.2d 1104, 1111 ("where a defendant invokes his or her Fifth Amendment privilege against self-incrimination in a timely manner, a sentencing court may not use his or her failure to waive that right as negative evidence to penalize him or her in deciding upon the appropriate sentence"). The United States Supreme Court has held, however, that consideration during sentencing of a defendant's failure to cooperate with authorities by testifying against others does not always rise to an impermissible punishment for exercise of the Fifth Amendment privilege against self-incrimination. See *Roberts v. United States* (1980), 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622.

{¶ 17} In *Roberts*, the Supreme Court held that the district court properly considered, as one factor in imposing sentence, the petitioner's refusal to cooperate with officials investigating a criminal conspiracy in which the petitioner was a confessed participant. There, although the petitioner had voluntarily confessed his involvement in a heroin-distribution conspiracy, he refused to name the suppliers involved in the conspiracy. Noting a "deeply rooted social obligation" to report known criminal behavior, the court stated that unless his silence is protected by the constitutional privilege against self-incrimination, a criminal defendant is, no less than any other citizen, obliged to assist authorities. Id. at 558, 100 S.Ct. 1358, 63 L.Ed.2d 622.

{¶ 18} The petitioner in *Roberts* argued that his failure to cooperate was justified by fears of physical retaliation and that the district court punished him for exercising his Fifth Amendment privilege against self-incrimination. The Supreme Court recognized that those arguments "would have merited serious consideration if they had been presented properly to the sentencing judge." Id. at 559, 100 S.Ct. 1358, 63 L.Ed.2d 622. The court stated, however, that the privilege against self-incrimination is not self-executing and that "[a]t least where the Government had no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion." Id. The petitioner in *Roberts* had neither expressly asserted his privilege against self-incrimination before sentencing nor suggested that he withheld information because there was any ground for fear of self-incrimination. The court found that "if petitioner believed that his failure to cooperate was privileged, he should have said so at a time when the sentencing court could have determined whether his claim was legitimate." Id. at 560, 100 S.Ct. 1358, 63 L.Ed.2d 622. Accordingly, the court found no constitutional error in the district court's consideration of the petitioner's failure to cooperate when imposing sentence.

{¶ 19} Here, although there is no indication in the record that appellant expressly informed the trial court that he was relying on his Fifth Amendment

privilege against self-incrimination in refusing to testify against Michael, the state has not argued, either to the trial court or on appeal, that appellant waived the privilege. Moreover, unlike in *Roberts*, this is a case in which the government had substantial reason to believe that appellant's requested testimony was likely to be incriminating. The petitioner in *Roberts* was asked to identify heroin suppliers in a large conspiracy, information not directly related to the specific charges he faced. Here, to the contrary, the charges against both appellant and Michael arose out of the same criminal activity, and appellant was asked to testify against Michael with respect to the very events underlying appellant's own pending charges. Despite his expressed desire to do so, appellant had not yet entered into a plea agreement at the time that Michael's case came on for trial or when Michael ultimately accepted a plea agreement. Like in *Glass*, where it is also unclear from the appellate opinion whether the appellant explicitly raised her Fifth Amendment privilege against self-incrimination before sentencing, there is no doubt that appellant's testimony about the events on February 22, 2007, in Michael's case would have been incriminating and would have led to direct consequences with respect to appellant's own case. Accordingly, we cannot conclude that appellant's failure to expressly raise his Fifth Amendment privilege against self-incrimination prior to sentencing precludes his reliance on the privilege now.

{¶ 20} The state asserts that appellant's arguments regarding the trial court's reliance on his refusal to testify against Michael are speculative and unsupported by the record. We disagree. Like in *Glass*, the trial court explicitly addressed appellant's refusal to testify against his codefendant as an indication that appellant had not accepted responsibility or shown remorse for his criminal activity immediately before imposing sentence. The trial court's statements at the sentencing hearing support appellant's claim that the court improperly relied upon his refusal to testify as an aggravating factor in calculating his sentence. In accordance with the Eighth District Court of Appeals' holding in *Glass*, we find that the trial court's application of the sentencing guidelines was contrary to law.

{¶ 21} For these reasons, we sustain appellant's single assignment of error, vacate appellant's sentence, and remand this matter to the Franklin County Court of Common Pleas for resentencing.

*Sentence vacated*
*and cause remanded.*

BRYANT and GREY, JJ., concur.

GREY, J., retired, of the Fourth Appellate District, sitting by assignment.